## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| JAKAH MANE | : | |
| 123 Felton Ave, Unit B | : | |
| Sharon Hill, Pa 19079 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.: _____ |
| | : | |
| v. | : | |
| | : | |
| KUSH BAGELS, LLC. | : | **JURY TRIAL DEMANDED** |
| d/b/a Upryes Bagel & Deli | : | |
| 22 N. Bryn Mawr Ave. | : | |
| Bryn Mawr, PA 19010 | : | |
| | : | |
| Defendant. | : | |

---

## CIVIL ACTION COMPLAINT

Jakah Mane (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      Plaintiff has initiated this action to redress violations Kush Bagels, LLC., doing business as Upryes Bagels & Deli, (hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), the Pennsylvania Human Relations Act ("PHRA"),[1] and the Pennsylvania Wage and Collection Law ("PWCL" - 43 P.S. §§ 260.1 et. seq.). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes.  Plaintiff intends to amend her complaint to include discrimination and retaliation claims under the PHRA once her claims have been administratively exhausted with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff's PHRA claims will mirror her Title VII claims asserted herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3.      This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendant Kush Bagels, LLC., upon information and belief, is doing business as Upryes Bagel & Deli, and is owned by the facility at which Plaintiff worked, located at the above-captioned address.

2

9.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

10.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.    Plaintiff is a black (African-American) female.

12.    Plaintiff is Muslim and practices the religious beliefs of Islam.

13.    Plaintiff was hired by Defendant's Owner, Kushner (hereinafter "Kushner" – Caucasian) on or about February 22, 2020.

14.    At all times during her employment with Defendant, Plaintiff worked as a House Attendant/Cashier.

15.    At all relevant times herein, Plaintiff was supervised by General Manager, Eleni Memmos (hereinafter "Memmos" - Caucasian).

16.    During her employment with Defendant, Plaintiff was subjected to disparate and discriminatory treatment because of her race (as were other African Americans) and religion by Defendant's management.

17.    For example, but not intending to be an exhaustive list, Memmos continuously stereotyped Plaintiff based on her race, made irrational misjudgments of her character based on her race, treated Plaintiff in a disparate manner as compared to her non-African American and/or non-Muslim coworkers, selective enforced policies against her which were not enforced against other employees who fell outside of her protected classes, and made derogatory comments to her. By way of specific example, in or about early 2020, Memmos sent Plaintiff home shortly after the

3

beginning of Plaintiff's shift because she wrongfully and racially stereotyped and irrationally misjudged Plaintiff.

18.     Plaintiff called Kushner after being sent home in early 2020 to ask why Memmos had taken this action and was told that he would find out and advise Plaintiff. Plaintiff did not receive a call explaining the reason she was sent home.

19.     However, the following shift after being sent home in early 2020, Plaintiff again questioned Kushner as to why Memmos sent her home and was told that Memmos would be speaking to Plaintiff after her shift. When the time came, Memmos apologized for sending Plaintiff home and further stated that the reason Plaintiff was sent home was because Memmos misjudged her and thought Plaintiff was high on some illegal substances.

20.     Plaintiff was in disbelief over Memmos' explanation as to why she sent Plaintiff home on the day in question because Memmos' assumption was an extremely disrespectful accusation without any basis behind it. There was nothing in Plaintiff's behavior that even remotely correlated with Memmos' absurd misjudgment.

21.     Plaintiff did not see Memmos treat others outside of Plaintiff's protected class like this and Plaintiff believes Memmos stereotyped her as a drug addict because she is black.

22.     By way of further example, in or about April of 2021, Kushner called Plaintiff at the beginning of the work week informing her not to come into work that day or the following three days. When Plaintiff asked Kushner what was the reason behind this decision, he told her that "there were some discrepancies with the computer/drawer the past few days."

23.     Plaintiff again felt like she was being sent home and stereotyped as a thief because she is black, as other Caucasian employees who were working the computer/drawer over the prior days were not told to stay home, like her.

24.     Upon Plaintiff's return to work (after being sent home for three days in April of 2021), she noticed an employee was not at work during her scheduled shift and was informed that she was terminated as she was stealing. Plaintiff never received an apology from Memmos for her unjust and racially stereotyped assumptions regarding Plaintiff's character.

25.     An example of the religious discrimination that Plaintiff was subject to occurred in or around Ramadan of 2022, when Plaintiff told Memmos that she planned to wear her Muslim garb, fast and that she needed to take breaks to pray.

26.     In response, Memmos objected to Plaintiff wearing Muslim garb and stated that "it would not look right with someone with Muslim attire on" and further claimed that wearing Muslim garb was a safety hazard.

27.     When Plaintiff asked Memmos how Muslim garb was allegedly a safety hazard, Memmos replied "you can't have that dragging around, and if you come in with that (referring to the Muslim garb) we are going to have to let you go."[2]

28.     In addition to the foregoing racial and religious discrimination that Memmos directly subjected Plaintiff to (discussed *supra*), Plaintiff also observed Memmos' discriminatory animosity towards other individuals as well (including other employees, applicants, and customers) based on their race, religion and even their sexual identity.

29.     For example, but not intending to be an exhaustive list:

   i.     Memmos called another African American employee derogatory names;

   ii.    On one occasion an applicant came to Defendant in full Muslim garb, and Memmos specifically stated that she was not going to hire the person because she was Muslim;

___

[2] The aforesaid specific instances of the racial and religious discrimination that Plaintiff was subjected to are not all inclusive and are merely a list of examples.

iii.   Memmos accused a black customer of trying to run off without paying his bill, even though he had left all of his items in the restaurant and was clearly outside smoking a cigarette; and

iv.   Memmos fired a transgender male employee after expressing that he wanted to be called "Ren" (instead of "Erin") and addressed with the pronouns he/his/him (instead of she/her/hers). Memmos specifically said "I am not referring to her as him" and "we have no space for that."

30.   In the months preceding Plaintiff's termination, Plaintiff complained to Kushner about the aforesaid protected class discrimination that Plaintiff was being subjected to and was also witnessing in the workplace by Memmos.

31.   However, Plaintiff's complaints were dismissed not properly investigated and the discrimination continued.

32.   For example, one day Plaintiff was tending to a customer at the register when Memmos came and stood directly behind Plaintiff, watching Plaintiff work.

33.   In the process of taking the aforesaid customer's order, Memmos rudely interrupted and proceeded to scream at Plaintiff, in front of customers, telling Plaintiff that she was not taking the orders correctly.

34.   Memmos routinely badgered Plaintiff in front of customers, telling Plaintiff to "shup up," and yelling at her while tell her she was incorrectly doing her job.

35.   Other coworkers such as Shareef Johnson (African American - hereinafter "Johnson") and Anna (Hispanic - last name unknown) experienced similar animosity from Memmos, often getting told something was incorrect even if it was correct.

36.     Plaintiff did not see Memmos treat Caucasians and/or non-Muslims in a similar discriminatory and hostile manner as aforementioned.

37.     Plaintiff continued to complain to Kushner about Memmos' racial discriminatory treatment of her in front of clients and was told "we will work it out."

38.     Shortly thereafter, Kushner informed Plaintiff that they addressed the aforementioned concerns with Memmos; however, Plaintiff believes this was a lie, as the aforesaid disparate and discriminatory treatment continued.

39.     On or about April 27, 2023, Memmos again targeted Plaintiff by degrading and accusing Plaintiff of having an attitude in front of the clients.

40.     On said occasion, Memmos did not want to take orders and moved to expedited orders, while Plaintiff was responsible for taking orders.

41.     As it was a busy time of day, a customer was given the wrong order by Memmos.

42.     Upon realizing that Memmos gave the wrong order to a customer, Memmos stated "OMG I gave that customer the wrong order."

43.     Memmos then asked Plaintiff what the customer's name was, and after Plaintiff stated that she was not sure, Memmos screamed at Plaintiff in front of the customers stating: "what do you mean you don't know what her name is!"

44.     After this incident on April 27, 2023 (described in Paragraphs 39-43), Memmos then sent Plaintiff home, during a busy time at Defendant's store, without justification.

45.     After being sent home by Memmos on or about Thursday, April 27, 2023, Plaintiff called Kushner and told him what happened and again expressed her concerns about the disparate and discriminatory treatment Memmos was subjecting her to based on her race, religion, and/or prior protected activity.

46.     In response to Plaintiff's expressed concerns on April 27, 2023 (discussed *supra*), Kushner replied  "Don't worry about it, you know how she gets. We will pay you for the rest of the day, and we will see you on Saturday."

47.     Kushner called Plaintiff on Friday, April 28, 2023 and said he was taking Plaintiff off the schedule until "we get things sorted out."

48.     Kushner called Plaintiff on Monday, May 1, 2023 and left a message terminating Plaintiff's employment stating "unfortunately it didn't work out."

49.     Plaintiff's termination came in close temporal proximity to her complaints of racial discrimination, religious discrimination, and retaliation.

50.     Plaintiff believes and therefore avers that she was terminated for discriminatory and retaliatory reasons under Title VII.

<strong>COUNT I<br><u>Violations of Title VII</u><br>([1] Religious Discrimination;[2] Hostile Work Environment; [3] Retaliation)</strong>

51.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.     Plaintiff was subject to discriminatory and disparate treatment while employed with Defendant because of her religious beliefs, such that she was subjected to a hostile work environment.

53.     Plaintiff also witnessed Memmos subject an applicant to discriminatory treatment based on her religious beliefs.

54.     Plaintiff complained to Defendant's management/owner about the aforesaid religious discrimination; however, her concerns were ignored she was subjected to increased

animosity and hostility (because of her religious beliefs and/or in retaliation for engaging in protected activity).

55.     Plaintiff believes and therefore avers that her religion was a motivating and/or determinative factor in the decision to send Plaintiff home on April 27, 2023, keep her out of work unpaid for several days, and then ultimately terminate her employment.

56.     Plaintiff believes and therefore avers that Defendant sent Plaintiff home on April 27, 2023, kept her out of work for a period of time unpaid, and then ultimately terminated her employment in retaliation for requesting religious accommodations in advance of her termination and/or for complaining of/objecting to religious discrimination.

57.     These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Title VII.

**COUNT II**
**Violations of 42 U.S.C. Section 1981**
**([1] Race Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**

58.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59.     During Plaintiff's employment with Defendant, she was subjected to a discriminatory and retaliatory hostile work environment through disparate treatment, demeaning and derogatory treatment, and pretextual admonishment, because of her race and/or complaints of racial discrimination.

60.     Instead of meaningfully investigating Plaintiff's aforesaid complaints of race discrimination (which was being directed at her as well as other staff and customers of Defendant), Defendant's management subjected her to increased hostility and animosity (based on her race

9

and/or complaints of racial discrimination) until terminating her employment on or about May 1, 2023.

61.     Plaintiff believes and therefore avers that she was sent home multiple times without pay, kept out of work without pay on several occasions, and terminated because of her race.

62.     Plaintiff also believes and therefore avers that she was sent home on April 27, 2023, kept out of work without pay for a period of time, and then terminated from her employment on May 1, 2023 for engaging in protected activity under Section 1981.

63.     These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Section 1981.

**COUNT III**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Race Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**

64.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

65.     During Plaintiff's employment with Defendant, she was subjected to a discriminatory and retaliatory hostile work environment through disparate treatment, demeaning and derogatory treatment, and pretextual admonishment, because of her race and/or complaints of racial discrimination.

66.     Instead of meaningfully investigating Plaintiff's aforesaid complaints of race discrimination (which was being directed at her as well as other staff and customers of Defendant), Defendant's management subjected her to increased hostility and animosity (based on her race and/or complaints of racial discrimination) until terminating her employment on or about May 1, 2023.

67.     Plaintiff believes and therefore avers that her race was a motivating and/or determinative factor in Defendant's decisions send her home early on April 27, 2023, keep her out of work unpaid for a period of time, and then ultimately terminate her employment on May 1, 2023.

68.     Plaintiff also believes and therefore avers that she was sent home on April 27, 2023, kept out of work without pay for a period of time, and then terminated from her employment on May 1, 2023 for engaging in protected activity under Title VII.

69.     These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Title VII.

**COUNT IV**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Retaliation)**

70.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

71.     During Plaintiff's employment with Defendant, she observed Memmos discriminate against another employee based on their gender identity.

72.     Plaintiff objected to and complained about the aforesaid unlawful discrimination (based on gender identity); however, Defendant's management refused to properly investigate or remedy the aforesaid discrimination and instead, Plaintiff was subjected to hostility and animosity as a result of the same until she was unlawfully terminated from her employment with Defendant.

73.     Plaintiff therefore believes and avers that she was sent home on April 27, 2023, kept out of work without pay for a period of time, and then terminated from her employment on May 1, 2023 for engaging in protected activity under Title VII.

74.     These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Title VII.

**COUNT V**
**Violations of the Pennsylvania Wage and Collection Law ("PWCL")**
**(Non-payment of wages / Unlawful Wage Retention)**

75.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

76.     Plaintiff had a verbal agreement with Defendant whereby Defendant agreed to compensate Plaintiff for all services she performed during her employment at rate of $15.00 per hour.

77.     Defendant failed to properly compensate Plaintiff for wages owed during her employment, for approximately ten (10) weeks, between in or about January and March 2022.

78.     Instead of properly paying Plaintiff her promised and agreed upon pay rate of $15.00 per hour, Defendant instituted an illegal payroll scheme wherein it unilaterally reduced Plaintiff's hourly, defined, and agreed upon rate without Plaintiff's consent and without providing any notice.

79.     Plaintiff was never informed by Defendant that $15.00 per hour was not her correct pay rate or that it had changed her pay rate.

80.     In fact, when Plaintiff inquired with Defendant as to why she was not being paid correctly, Defendant's management consistently made-up convoluted explanations as to why they believed the new rate they were paying her was correct.

81.     Plaintiff performed the agreed-upon services for Defendant, and Defendant failed to properly compensate Plaintiff for the services rendered at her hourly rate as assured, previously agreed upon, and contractually owed and/or unlawfully made deductions to her weekly pay during the aforesaid relevant period.

82.     After consistently complaining of the same, Defendant reinstated Plaintiff correct hourly rate of $15.00 per hour; however, it never paid her for the wages that she was owed between January of 2022 and March of 2022.

83.     These actions as aforesaid constitute violations of the Pennsylvania Wage Payment and Collection Law.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.     Plaintiff is to be awarded punitive/liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.     Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

G.     Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ.

P. 38(a)(1).


                                        Respectfully submitted,


                                        **KARPF, KARPF & CERUTTI, P.C.**


                            By:    _____
                                        Ari R. Karpf, Esq.
                                        3331 Street Rd.
                                        Two Greenwood Square, Suite 128
                                        Bensalem, PA 19020
                                        (215) 639-0801

Dated:  July 28, 2023


14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| Jakah Mane | : | CIVIL ACTION |
| v. | : |  |
| Kush Bagels, LLC. d/b/a Upryes Bagel & Deli | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                     (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                   (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                      (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.         (X )

| 7/28/2023 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___123 Felton Ave, Unit B, Sharon Hill, PA 19079___

Address of Defendant: ___22 N. Bryn Mawr Avenue, Bryn Mawr, PA 19010___

Place of Accident, Incident or Transaction: ___Defendant's place of business___

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___7/28/2023___   _____   ___ARK2484 / 91538___
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☒ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify): _____*

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___Ari R. Karpf___, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: ___7/28/2023___   _____   ___ARK2484 / 91538___
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MANE, JAKAH

**(b)** County of Residence of First Listed Plaintiff    Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS

KUSH BAGELS, LLC. D/B/A UPRYES BAGEL & DELI

County of Residence of First Listed Defendant    Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of the Title VII, Section 1981, PHRA and the PWCL.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE    7/28/2023

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Print     Save As...     Reset